L AMSTER ROTHSTEIN & EBENSTEIN LLP
Anthony LoCicero (Admitted Pro Hac)
alocicero@arelaw.com
Abraham Kasdan (Admitted Pro Hac)
akasdan@arelaw.com
Joseph M. Casino (Admitted Pro Hac)
jcasino@arelaw.com
90 Park Avenue
New York, New York 10016
Telephone: 212.336.8000
Facsimile: 212.336.8001

PROCOPIO, CORY, HARGREAVES
 & SAVITCH LLP
Victor M. Felix (Bar No. 179622)
victor.felix@procopio.com
Frederick K. Taylor (Bar No. 159838)
fred.taylor@procopio.com
Mathieu G. Blackston (Bar No. 241540)
mathieu.blackston@procopio.com
525 B Street, Suite 2200
San Diego, California 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

*Attorneys for Defendants and Counterclaim-Plaintiffs,*
JVC Americas Corporation and
JVC Kenwood Corporation

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| In re: e.Digital Cases | Case nos. |
|---|---|
| | 12cv2696-DMS (WVG) |
| | 12cv2698-DMS (WVG) |
| | 12cv2701-DMS (WVG) |
| | 12cv2825-DMS (WVG) |
| | 12cv2877-DMS (WVG) |
| | 12cv2891-DMS (WVG) |
| | 12cv2899-DMS (WVG) |
| | 12cv2997-DMS (WVG) |
| | 13cv0023-DMS (WVG) |
| | 13cv0112-DMS (WVG) |
| | 13cv0356-DMS (WVG) |

13cv0780-DMS (WVG)
13cv0781-DMS (WVG)
13cv0782-DMS (WVG)
13cv0783-DMS (WVG)
13cv0785-DMS (WVG)

**DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION TO APPLY
COLLATERAL ESTOPPEL
REGARDING CLAIM
CONSTRUCTION RULING IN
PRIOR E.DIGITAL CASE**

**DEMAND FOR JURY TRIAL**

Assigned to:     Hon. Dana M. Sabraw
Courtroom:       13A

Hearing Date:    July 26, 2013
Hearing Time:    1:30 pm

ORAL ARGUMENT REQUESTED

In re: e.Digital Cases

Defendants' Memorandum Of Law Regarding Collateral Estoppel

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    I.     The Two Relevant Patents-In-Suit ................................................................. 2

          A.   United States Patent No. 5,491,774 ................................................. 2

          B.   United States Patent No. 5,839,108 ................................................. 5

    II.    e.Digital's Prior Litigations Involving The Patents-In-Suit ........................ 6

ARGUMENT .................................................................................................................. 7

    I.     Collateral Estoppel Bars e.Digital From Asserting A Claim
          Construction Different From The One Entered By The Pentax
          Court. ............................................................................................................ 7

          A.   Legal Standards ............................................................................... 7

          B.   Collateral Estoppel Bars e.Digital From Asserting Any
               Different Claim Constructions Than Those Entered By The
               *Pentax* Court With Respect To The '774 Patent ............................. 9

          C.   Collateral Estoppel Also Bars e.Digital From Asserting
               Different Claim Constructions With Respect To The '108
               Patent .............................................................................................. 11

    II.    The Reexamination Of The '774 Patent Has No Effect On the
          Application Of Collateral Estoppel ............................................................ 13

CONCLUSION ............................................................................................................ 15

i

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

### FEDERAL CASES

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*
  352 F. Supp. 2d 1119 (C.D. Cal. 2005) ................................................................... 12

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*
  713 F.3d 1377 (Fed. Cir. 2013) .................................................................................. 7

*Curtiss-Wright Flow Control Corp. v. Z & J Techs. GmbH*
  563 F. Supp. 2d 1109 (C.D. Cal. 2007) ..................................................................... 9

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*
  836 F.2d 1320 (Fed. Cir. 1987) .................................................................................. 8

*e.Digital Corp. v. Casio America, Inc. et al*
  Case No. 08-cv-00093-DF-CE (E.D. Tex.) .............................................................. 6

*e.Digital Corp. v. Pentax of America, Inc.*
  Civil Action No. 09-cv-2578-MSK-MJW ....................................................... passim

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*
  279 F.3d 1022 (Fed. Cir. 2002) ................................................................................ 13

*Foster v. Hallco Manuf. Co., Inc.*
  947 F.2d 469 (Fed. Cir. 1991) .................................................................................. 11

*Gibson Guitar Corp. v. 745 LLC*
  No. 3:11-0058, 2012 WL 90445 (M.D. Tenn. Jan. 11, 2012) ........................... 14, 15

*Hydranautics v. FilmTec Corp.*
  204 F.3d 880 (9th Cir. 2000) ..................................................................................... 8

*Int'l Gamco, Inc. v. Multimedia Games Inc.*
  732 F. Supp. 2d 1082 (S.D. Cal. 2010) .......................................................... 8, 9, 10

*Kamilche Co. v. United States*
  53 F.3d 1059 (9th Cir. 1995) .............................................................................. 11, 12

*Parklane Hosiery Co. v. Shore*
  439 U.S. 322 (1979) ................................................................................................... 8

ii

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
    442 F.3d 741 (9th Cir. 2006) ........................................................................ 9

*Tech. Licensing Corp. v. Thomson, Inc.*
    No. Civ. 2:03-1329 WBS PAN, 2010 U.S. Dist. LEXIS 21735 (E.D. Cal.
    Mar. 10, 2010) .............................................................................. 12, 13

*TM Patents, L.P. v. IBM Corp.*
    72 F. Supp. 2d 370 (S.D.N.Y. 1999) .......................................................... 9

Defendants' Memorandum of Law Regarding Collateral Estoppel

**INTRODUCTION**

Certain key claim limitations in two of the four patents asserted by e.Digital in this case were construed in a previous litigation prosecuted by e.Digital against multiple defendants in the District of Colorado. In that case, the court entered an order adopting the defendants' proposed constructions and rejecting those proffered by e.Digital. e.Digital responded to the adverse ruling by quickly settling with all of the remaining defendants. Notably, e.Digital requested and received the voluntary dismissal of the Colorado case without asking the court to vacate its claim construction ruling. Having waived its right to appeal the claim construction order, e.Digital is now collaterally estopped from seeking a different claim interpretation here. The result of the preclusion is the same case dispositive effect for two of the patents-in-suit.

Where, as here, the following three factors are met, a party is collaterally estopped from relitigating a prior ruling: (1) where the identical issue arose in the prior litigation; (2) where the prior proceeding ended with a final judgment on the merits; and (3) where the party against which collateral estoppel is asserted was a party, or in privity with a party, in the prior proceeding. There is no dispute that e.Digital was a party in the Colorado litigation, and because two of the four patents-in-suit here contain the same key claim limitation that the Colorado court previously construed against e.Digital, there should also be no dispute regarding the first requirement that the identical issue arose in the prior litigation.

This leaves only the question of whether e.Digital's settlement of the Colorado litigation, rather than appealing the adverse claim construction ruling, is a "final judgment" for purposes of collateral estoppel. The Ninth Circuit is clear that a settlement of a prior litigation is a final judgment in this context. For example, in a decision from this District, the District court applied that principle to collaterally estop a patent owner from relitigating an adverse claim construction entered in a prior litigation that the patent owner resolved through settlement. The present circumstances are identical, and the result should be as well. e.Digital is collaterally

1

estopped from relitigating the adverse claim construction ruling entered by the Colorado court.

All three factors for collateral estoppel are met here, precluding e.Digital from asserting distinct constructions for the claim terms already construed by the District of Colorado.  The claim constructions entered in that case were dispositive because they precluded e.Digital from proving infringement by any accused device then—and do so now.  As such, once this Court adopts the claim construction ruling entered by the Colorado court—a result that e.Digital cannot avoid—two of the patents-in-suit can be removed from this case, whether by stipulation or through summary judgment.

## BACKGROUND

e.Digital is asserting various combinations of four patents against the Defendants.  The four patents relate to handheld devices in which voice recordings and dictation are saved on a specific form of memory called "flash" memory, as well as to methods for editing such saved recordings.  The claims of two of the four patents-in-suit include the key limitation that the Colorado court already construed against e.Digital.

### I.     The Two Relevant Patents-In-Suit

#### A.     United States Patent No. 5,491,774

e.Digital is asserting United States Patent No. 5,491,774 ("the '774 patent") in the present case.  The '774 patent was also at issue in two prior litigations filed by e.Digital, one of which included a claim construction ruling in which the court construed the key limitation of the '774 patent claims, *i.e.*, "a ***flash memory*** module which operates as ***sole memory*** of the received processed sound electrical signals."

The '774 patent is directed to a "record/playback device for use with a removable, interchangeable, flash memory recording medium which enables extended

recording comparable with tape cassette dictating equipment." (Ex. 1[1], '774 patent, Abstract.) According to the '774 patent's specification, prior art record/playback devices that used cassette tapes were well known. (*Id.* at 1:18-25.) Moreover, it was "well known to store virtually all forms of data in either digital or analog format within a computer [even including] voice information." (*Id.* at 2:4-6.)

During prosecution of the application which led to the issuance of the '774 patent in February 1996, the applicants narrowed their claims in response to the Examiner's rejection of the claims in view of the prior art. As a result of the narrowing amendment, all of the '774 patent claims require that the claimed device have "a ***flash memory*** module which operates as ***sole memory*** of the received processed sound electrical signals." (Ex. 2, Amendment, at 2, 5 (emphases added).) The applicants argued that, as amended, the claims were patentable because "[a]s was noted in the Examiner conference, Applicant is unaware of any prior art teaching which uses flash memory ***without another memory system such as RAM.***" (*Id.* at 10 (emphasis added).) The '774 patent then issued.

In 2010, a third party petitioned for *ex parte* reexamination of claims 1-15, 18, and 19 of the '774 patent, and the U.S. Patent and Trademark Office ("PTO") granted the petition. (Ex. 1, '774 Patent Reexamination Certificate.) During the reexamination proceeding, e.Digital presented various arguments related to the "control logic circuitry" recited in original independent claims 1 and 19, and ultimately amended the independent claims to add limitations to the "control logic circuitry" claim element, as shown below in the amended original claim 1, which e.Digital submitted on May 17, 2012 (underlined language added by e.Digital; emphasis added in bold italics to highlight the claim language not amended and subject to this motion):

---

[1] All Exhibits refer to Exhibits to the Declaration of Victor M. Felix, filed concurrently herewith.

1. (Currently Amended) A record/playback device for use with a removable, interchangeable, flash memory recording medium which enables extended recording comparable with tape cassette dictating equipment, said device comprising:

a housing;

a microphone element coupled to the housing and configured to receive and process sound into electrical signals;

control circuitry coupled to the microphone element and including signal input circuitry, amplification circuitry, analog-to-digital conversion circuitry, memory control circuitry, signal output circuitry and control logic circuitry, which includes a microprocessor coupled to switch circuitry, for performing record and playback functional operations with respect to the electrical signals and other regulated components of the record/playback device;

switch means coupled to the control circuitry for selecting the desired functional operations to be performed;

a receiving socket electrically coupled to the memory control circuitry and configured for electrical coupling with *a flash memory module which operates as sole memory of the received processed sound electrical signals* and is capable of retaining recorded digital information for storage in nonvolatile form;

a speaker coupled to the control circuitry for playback of recorded digital information; and

a power source coupled to the control circuitry for supplying electrical power to the device;

wherein the power source is coupled to the switch circuitry; and

wherein the switch circuitry includes multiple transistors configured,

to enable supply of electrical power to the receiving socket and to enable at least one of the microphone element and the speaker during record and playback functional operations and in response to control signals provided by the microprocessor, and

to optionally disable supply of electrical power to the receiving socket and to optionally enable supply of electrical power to at least one of the microphone element and the speaker between occurrences of record and playback functional operations and in response to control signals provided by the microprocessor.

e.Digital made similar amendments regarding original independent claim 19. The two

amended independent claims issued as new independent claims 33 and 34, respectively, on August 14, 2012, and claims 1 and 19 were canceled.

e.Digital did not amend the key "sole memory" limitation during the reexamination.

**B.    United States Patent No. 5,839,108**

e.Digital is also asserting United States Patent No. 5,839,108 ("the '108 patent"), which issued in November 1998. (Ex. 3, '108 patent.) Like the '774 patent, the '108 patent is directed to a "record/playback device for use with a removable, interchangeable, flash memory recording medium." The '108 patent incorporates by reference the '774 patent disclosure and copies the first two Figures from the '774 patent.

The sole distinction between the inventions purportedly disclosed and claimed in the '774 patent and the '108 patent is that the invention in the '108 patent includes a second microphone that "enables noise dampened recording of voice data and CD quality stereo recording of music data." (Ex. 3, '108 patent, Abstract and, *e.g.*, col. 7:1-7.) Both of the independent claims of the '108 patent that e.Digital is asserting in this case—claims 2 and 5—recite the *identical* "sole memory" limitation that is in the '774 patent, and which was construed in the prior litigation. (*Id.*, cols. 11:62-12:1, 12:47-48.) The support in the '108 patent for the "sole memory" limitation is found in the references to the '774 patent, and the Figures that were copied from the '774 patent into the '108 patent.

In his Reasons for Allowance in the PTO's Notice of Allowability of the '108 patent (Ex. 4), the Examiner explained that the '108 patent embodies the same invention as the '774 patent and adds an element to improve the '774's performance:

> The present invention discloses a system for the reproduction of audio data using a flash memory, with the sound quality of a compact disk. The present invention provides an improvement over the system of Norris et al., U.S. 5,491,774, *which improvement appears to be limited to the incorporation of a second microphone element* utilized to cancel noise

Defendants' Memorandum of Law Regarding Collateral Estoppel

received at the first microphone element (note claim 2), to provide better sound quality.

(Ex. 4, Notice of Allowance, p. 3 (emphasis added).)

## II.    e.Digital's Prior Litigations Involving The Patents-In-Suit

e.Digital asserted three of the patents-in-suit here in two previous litigations.  In *e.Digital Corp. v. Casio America, Inc. et al*, Case No. 08-cv-00093-DF-CE (E.D. Tex.), e.Digital asserted, *inter alia*, the '774 patent against seven consumer electronics manufacturers.  The *Casio* defendants settled before the court issued any substantive orders and before *Markman* briefing began.

In *e.Digital Corp. v. Pentax of America, Inc.*, Civil Action No. 09-cv-2578-MSK-MJW (D. Col.), e.Digital once again asserted, *inter alia*, the '774 patent—this time in the District of Colorado—against 28 defendants, all of whom make and/or sell digital cameras, cellular phones and/or smart phones.[2]  Unlike the *Casio* case, the *Pentax* case proceeded through a first phase of discovery, including expert discovery, in which the parties focused on claim construction issues.  After completing claim construction discovery, e.Digital and the *Pentax* defendants briefed the claim construction issues.  The *Pentax* court conducted a one-day *Markman* hearing on January 28, 2011, which included live testimony from the lead inventor, expert testimony, and attorney argument.  The *Pentax* court issued its claim construction ruling on June 28, 2011.  (Ex. 5, *Markman* ruling; *see also Pentax*, Dkt. No. 395; *Pentax*, 2011 WL 2560069.)

In its claim construction ruling, the *Pentax* court discussed the technology disclosed in the '774 patent, relying on the testimony of the lead inventor elicited by

---

[2]  e.Digital also asserted U.S. Patent No. 5,742,737 ("the '737 patent"), which is asserted in this case, in the *Casio* and *Pentax* cases.  Although the *Pentax* court did not directly construe any claim terms in the '737 patent, other fact and legal issues addressed by the *Pentax* court may have collateral estoppel effects in this case, and Defendants will address those issues, if necessary, at the appropriate time.

e.Digital during his testimony at the *Markman* hearing, and summarized the salient facts from the '774 patent's file histories, including that e.Digital had added the "sole memory" limitation during prosecution to overcome prior art-based rejections. (*Id.* at 2-6.) The Court noted in its claim construction ruling that "the Defendants stated, ***without objection from the Plaintiff***, that there would be no need to construe [any] terms [other than the 'sole memory' term] if the Court were to construe the 'sole memory' term in favor of the Defendants. Accordingly, as the ensuing discussion makes clear, the Court need only construe the 'sole memory' claim [term]." (*Id.* at 3 (emphasis added).)

Based on the intrinsic and extrinsic evidence, including the live testimony at the *Markman* hearing, the *Pentax* court construed the phrase "flash memory module which operates as sole memory" to require that "the device use ***only*** flash memory, not RAM or any other memory system, while engaging the CODEC, DSP (as applicable), and memory control functions, as well as storing the fully-manipulated data." (*Id.* at 15-16 (emphasis added).) The *Pentax* court also construed the remainder of this claim limitation—"received processed sound electrical signals"—to mean "the electrical signals that have been generated by the microphone and passed through the amplifier and gain control signals, but have yet to be converted by the CODEC." (*Id.*)

e.Digital settled with the remaining *Pentax* defendants soon thereafter, and the case was dismissed with prejudice on October 26, 2011. Neither e.Digital nor any of the *Pentax* defendants requested that the claim construction ruling be vacated.

## ARGUMENT

## I.    Collateral Estoppel Bars e.Digital From Asserting A Claim Construction Different From The One Entered By The Pentax Court.

### A.    Legal Standards

"Collateral estoppel 'precludes a plaintiff from relitigating identical issues by merely switching adversaries' and precludes a plaintiff 'from asserting a claim that the plaintiff had previously litigated and lost against another defendant.'" *Aspex Eyewear,*

*Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (*quoting Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 (Fed. Cir. 1987) ("The prior determination of certain issues, including the issues of claim construction and of infringement by [one accused model] and non-infringement by [another accused model], bars judicial redetermination of those issues.").

"Since the criteria of collateral estoppel are not unique to patent issues, [the Federal Circuit is] guided by the precedent of the regional circuit." *Id.* In the Ninth Circuit, collateral estoppel applies if: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against which collateral estoppel is asserted was a party or in privity with a party in the first proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). Where, as here, a prior claim construction is at issue, the second factor is typically the only contested factor. *Cf. Int'l Gamco, Inc. v. Multimedia Games Inc.*, 732 F. Supp. 2d 1082, 1089 (S.D. Cal. 2010) (finding that the first and third elements are "clearly met" where the same patent and claim terms were at issue in prior and present litigations).

In *Int'l Gamco*, the defendant moved for reconsideration of the claim construction ruling on collateral estoppel grounds, in view of a prior claim construction ruling, which was entered by another district court and which addressed certain of the claim terms at issue in the *Int'l Gamco* case. *Id.* at 1089. In the prior litigation, the district court had conducted a *Markman* hearing that included live witness testimony, and the prior court based its claim construction ruling on a detailed analysis of the specification and prosecution history of the patent-in-suit. *Id.* at 1089-90. After the prior claim construction ruling had been entered, the patentee had moved for, and received, a dismissal of the earlier case with prejudice, pursuant to a settlement agreement. *Id.* at 1090.

Defendants' Memorandum of Law Regarding Collateral Estoppel

Because the *Int'l Gamco* court was not aware of the prior claim construction ruling when it issued its *Markman* ruling, the court granted the defendant's motion for reconsideration and adopted the prior claim construction ruling. *Id.* In doing so, the court analyzed the collateral estoppel factors relevant in the Ninth Circuit, and recognized that "the first and third factors [were] clearly met…." *Id.* As to the second factor, the patentee argued that the prior dismissal was not a "final judgment on the merits." *Id.* at 1090-1091. The court rejected this argument because "***[u]nder Ninth Circuit law, a court approved settlement is a final judgment on the merits for purposes of collateral estoppel.***" *Id.* at 1091 (*citing Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006)) (emphasis added). The *Int'l Gamco* observed that district courts in California hold that:

> A party who cuts off his right to review by settling a disputed matter cannot complain[] that the question was never reviewed on appeal. The *Markman* rulings were not vacated as part of the settlement. They therefore remain preclusive.

*Id.* at 1091-92 (*quoting Curtiss-Wright Flow Control Corp. v. Z & J Techs. GmbH*, 563 F. Supp. 2d 1109, 1121-1122 (C.D. Cal. 2007) (*citing TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370, 378 (S.D.N.Y. 1999))).

## B.   Collateral Estoppel Bars e.Digital From Asserting Any Different Claim Constructions Than Those Entered By The *Pentax* Court With Respect To The '774 Patent

In *Pentax*, the Court construed the phrase "flash memory module which operates as sole memory" in the '774 patent to require that "the device use ***only*** flash memory, not RAM or any other memory system, while engaging the CODEC, DSP (as applicable), and memory control functions, as well as storing the fully-manipulated data." (Ex. 5, *Markman* ruling, at 15-16 (emphasis added).) The *Pentax* Court also construed the '774 patent claim limitation "received processed sound electrical signals" to mean "the electrical signals that have been generated by the microphone

Defendants' Memorandum of Law Regarding Collateral Estoppel

and passed through the amplifier and gain control signals, but have yet to be converted by the CODEC." (*Id.*)  The *Pentax* Court based these rulings on a detailed analysis of the '774 patent's specification and its prosecution histories, including e.Digital's addition of the "sole memory" limitation during prosecution specifically to overcome prior art-based rejections. (*Id.* at 2-16.)

e.Digital is barred from asserting in the present cases any other claim construction for these terms. *See Int'l Gamco*, 732 F. Supp. 2d at 1089-91.  The first collateral estoppel element – identity of issues – is clearly met here.  The same patent and the same claim terms are at issue here as were at issue in *Pentax*.  *See id.* at 1090 (finding that the first element is "clearly met" where the same patent and claim terms were at issue in both the prior and the present litigations).  Moreover, the third collateral estoppel element – requiring that the party against which collateral estoppel is to be applied was a party in the prior litigation – is also met here.  e.Digital was the plaintiff and patent owner in *Pentax*, and it occupies the same positions here. Therefore, only the second collateral estoppel element is at issue, and that one is addressed by *Int'l Gamco*.

As to the second element, there is no dispute that the *Pentax* case was dismissed with prejudice pursuant to e.Digital's motions, once e.Digital had reached settlements with each of the defendants.  Moreover, most of these settlements occurred after the *Pentax* court issued its claim construction ruling. (Ex. 6, *Pentax* Docket.)  e.Digital requested dismissal of each *Pentax* defendant, and ultimately the case, without requesting that the *Pentax* court vacate its claim construction ruling.  *Cf. Int'l Gamco*, 732 F. Supp. 2d at 1091-92 ("A party who cuts off his right to review by settling a disputed matter cannot complain[] that the question was never reviewed on appeal. The [prior] *Markman* rulings were not vacated as part of the settlement.  They therefore remain preclusive." (citations omitted)).  Finally, as the *Pentax* Court noted in its claim construction ruling, "the [*Pentax*] Defendants stated, ***without objection from the Plaintiff***, that there would be no need to construe [any] terms [other than the

Defendants' Memorandum of Law Regarding Collateral Estoppel

'sole memory' term] if the Court were to construe the 'sole memory' term in favor of the Defendants. Accordingly, as the ensuing discussion makes clear, the Court need only construe the 'sole memory' claim [term]." (Ex. 5, *Markman* ruling, at 3 (emphasis added).)

With all three of the Ninth Circuit's collateral estoppel factors having been met, the Court should apply collateral estoppel to bar e.Digital from asserting any different constructions for the claim terms addressed in the *Pentax* court's claim construction ruling, which "remain[s] preclusive." *Id.*

### C. Collateral Estoppel Also Bars e.Digital From Asserting Different Claim Constructions With Respect To The '108 Patent

e.Digital's '108 patent was not at issue in the *Pentax* case, but asserted independent claims 2 and 5 of '108 patent in this case contain the identical claim term from the '774 patent that the *Pentax* court construed: "flash memory module which operates as sole memory." (Ex 3, '108 patent col. 11:62-12:1; 12:47-48.) Because the construction of the "sole memory" claim limitation in the '108 patent was "necessarily decided at the previous proceeding" and this claim term "is identical to the one which is sought to be relitigated," e.Digital is collaterally estopped with respect to the '108 patent for the same reasons that it is collaterally estopped with respect to the '774 patent.

The courts turn to the Restatement (Second) of Judgments to assess the first collateral estoppel factor, namely, whether the issue was necessarily decided in the prior proceeding. *See, e.g., Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995); *Foster v. Hallco Manuf. Co., Inc.*, 947 F.2d 469, 480 (Fed. Cir. 1991). The Restatement presents four factors in this regard: (a) whether there is a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first; (b) whether the new evidence or argument involves the application of the same rule of law as that involved in the prior proceeding; (c) whether the pretrial preparation and discovery related to the matter presented in the first action

could reasonably be expected to have embraced the matter sought to be presented in the second; and (d) how closely related are the claims involved in the two proceedings. *Kamilche*, 53 F.3d at 1062; *see also Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119, 1124-25 (C.D. Cal. 2005).

Applying these very factors, the Eastern District of California has held that collateral estoppel applies to patent claim terms construed in different but related patents, where the claim terms at issue in the later litigation are identical to the terms construed in the earlier litigation. *Tech. Licensing Corp. v. Thomson, Inc.*, No. Civ. 2:03-1329 WBS PAN, 2010 U.S. Dist. LEXIS 21735, *16-22 (E.D. Cal. Mar. 10, 2010). In *Tech. Licensing*, the patentee asserted two patents, each of which was a reissue of one of two patents that had been litigated in a prior litigation in another district court. *Id.* at *17-*18. In the prior litigation, the court had ruled that two terms in one of the underlying patents—"circuit" and "circuitry"—were means-plus-function limitations but did not address that issue for the same claim terms in the second underlying patent. Thus, the issue in *Tech. Licensing*, where the respective reissue patents of the two previously-litigated patents were at issue, was whether the claim terms "circuit" and "circuitry" in the reissue of the second underlying patent were means-plus-function limitations, as they had been construed to be in the first underlying patent.

Turning to the Restatement factors, the *Tech. Licensing* court found substantial overlap between the evidence or argument to be advanced in the second proceeding because the issue of whether the "circuit" and "circuitry" terms in the reissue of the second underlying patent should be construed as means-plus-function limitations presented the identical argument to that made for those same claim terms with respect to the first underlying patent in the prior litigation. *Id.* at *18-*19. The court recognized that there was neither any new evidence nor any new argument on the issue in the second proceeding and, in any event, the same rule of law applied to the claim construction proceedings in both cases. *Id.* Finally, the patents at issue in both

proceedings—the underlying patents in the first case, and the respective reissue patents in the second case—were closely related, and part of the same patent family, leading to the inescapable conclusion that the patentee should have expected that any construction would apply in future litigation regarding the same terms. *Id.* at *19. Indeed, a well-settled canon of claim construction, the court noted, directs that claim terms occurring in the same patent will not be accorded different meaning, and that principle "applies with equal force to identical terms appearing in related patents." *Id.* at *19-*20 (*citing Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1031 (Fed. Cir. 2002) (holding that "[t]he same term or phrase should be interpreted consistently where it appears in claims of common ancestry.")).

The same analysis compels the same result here. As noted by the Examiner in his Reasons for Allowance of the '108 patent, the device disclosed and claimed in the '108 patent is the same invention as that of the '774 patent, except for the addition of a second microphone. (Ex. 4, Notice of Allowability, at 3.) The record from the '774 patent that the *Pentax* court considered and relied upon would, therefore, be front and center again for the same claim term in the '108 patent. There would be a substantial overlap in evidence and argument. The same claim construction principles would indisputably apply. Little, or no, preparation beyond what was marshaled in *Pentax* for the '774 patent would be needed. Finally, the two patents could not be more closely related given that the '108 represents only a "limited" improvement of the '774 patent's purported invention. Thus, because the same claim term is present in the '108 patent as was construed in the related '774 patent, e.Digital is collaterally estopped from relitigating the claim construction for the "sole memory" claim limitations in the '108 patent.

## II.     The Reexamination Of The '774 Patent Has No Effect On the Application Of Collateral Estoppel

The reexamination of the '774 patent does not change the fact that the claim construction issues decided in the *Pentax* case are identical to the ones to be decided in

the present case. Indeed, the "sole memory" limitation was never at issue in the '774 patent reexamination. Instead, the reexamination focused on the "control logic circuitry" claim element, and e.Digital ultimately amended the independent claims to add limitations to that claim element. Accordingly, e.Digital cannot avoid the *Pentax* court's adverse claim construction ruling by arguing that the reexamination of the '774 patent somehow moots the preclusive effect of the *Pentax* claim construction ruling.[3]

Collateral estoppel applies when, as here, an accused infringer does not seek to apply collateral estoppel with respect to the scope of the claims as a whole but, rather, only as to the construction of terms that were in the claims of the original patent and remain unchanged in the claims of the reexamined patent. *See Gibson Guitar Corp. v. 745 LLC*, No. 3:11-0058, 2012 WL 90445, *5 (M.D. Tenn. Jan. 11, 2012). In *Gibson Guitar*, the court applied collateral estoppel principles to prevent the patentee from relitigating claim construction issues decided in a previous case. *Id.* at *4. Like e.Digital here, the patentee in *Gibson Guitar* argued that an intervening reexamination precluded application of collateral estoppel. *Id.* at *5. The court rejected that argument because the specific claim terms at issue were "identical in both the original patent and the reexamined patent." *Id.*

The *Gibson Guitar* court also noted that the patentee "made no effort to avoid the [prior claim construction] ruling during the reexamination proceeding, did not seek to convince the examiner that the [prior] court was in error, and did not seek a [different] claim construction…." *Id.* at *6. Similarly, e.Digital made no effort during the '774 patent reexamination to address the *Pentax* claim construction ruling, even though the Examiner presiding over the reexamination had located the *Pentax* claim construction ruling, and stated that he had considered the ruling. (Ex. 7, Office Action

---

[3] e.Digital has told the Court and Defendants that it intends to argue that the reexamination of the '774 patent renders the *Pentax* claim construction order moot. (Ex. 9, Joint Preliminary Statement, at 7.)

at 25.)    Indeed, e.Digital itself filed Information Disclosure Statements in the '774 patent reexamination, with copies of the parties' claim construction briefs filed in the *Pentax* case.  (Ex. 8, Information Disclosure Statement.)  Thus, e.Digital was aware that the *Pentax* claim construction ruling was at issue in the patent reexamination and that it had an opportunity to address the adverse claim construction ruling in that context.  But e.Digital made no effort to address the *Pentax* claim construction ruling in the '774 patent reexamination.  Simply put, the reexamination proceeding did not change the meaning of the claim terms construed in the *Pentax* case and, therefore, those proceedings have no effect on the application of collateral estoppel in this case.

Like the claim terms in *Gibson Guitar*, the claim terms at issue here were not amended during the reexamination of the '774 patent.  Therefore, that reexamination does not provide to e.Digital in this case a shield to avoid the *Pentax* court's adverse claim construction ruling.

## CONCLUSION

The facts are straightforward, and the case law directly on point.  The claim interpretation of record for the '774 patent in prior litigation lost by e.Digital has preclusive effect here.  The identical claim term found in the '108 patent is controlled by the construction of that term in the related '774 patent.  Accordingly, the Court should apply the doctrine of collateral estoppel to preclude e.Digital from seeking any different construction here.

DATED: June 19, 2013          AMSTER ROTHSTEIN &
                                       EBENSTEIN LLP

                                       PROCOPIO, CORY, HARGREAVES &
                                       SAVITCH LLP

By: */s/* Victor M. Felix
        Victor M. Felix
        Frederick K. Taylor
        525 B Street, Suite 2200
        San Diego, California  92101
        Telephone: 619.238.1900
        Facsimile: 619-235-0398
        Email: victor.felix@procopio.com
        fred.taylor@procopio.com

15

Mathieu G. Blackston
12544 High Bluff Drive, Suite 300
San Diego, CA  92130
Telephone:  858-720-6300
Fax:  619-235-0398
mathieu.blackston@procopio.com

Attorneys for Defendants  JVC
Americas Corp., and JVC Kenwood
Corporation